MATTER OF HUA MIN LIN

In Deportation Proceedings

A-31243881

*Decided by Board August 5, 1975*

Where respondent was admitted to the United States for permanent residence in possession of a labor certification issued on the basis of representations that he would be employed by the San Francisco Chinese Opera Club as a teacher of musical instruments used in Chinese opera to over 40 pupils at a salary of $650 per month, whereas, in fact, the Club had no job to offer respondent; at most, there was an arrangement by which he could give private music lessons to Club members for whatever compensation he might receive; and the purported "salary" from the Club was nothing more than a ruse by which he was allowed to submit $650 of his own money, obtained from any source, and receive a check back from the Club "for the record", the labor certification was invalid since no certification could have been issued had the correct facts been known. Hence, respondent is deportable under section 241(a)(1) of the Immigration and Nationality Act because excludable at entry under section 212(a)(14) of the Act for lack of a valid labor certification.

CHARGES:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at time of entry (section 212(a)(14)) [8 U.S.C. 1182(a)(14)]—no labor certification

Lodged: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)—Excludable at time of entry (section 212(a)(14)) [8 U.S.C. 1182(a)(14)]—no valid labor certification

ON BEHALF OF RESPONDENT:
Robert S. Bixby, Esquire
30 Hotaling Place
San Francisco, California 94111

ON BEHALF OF SERVICE:
Bernard J. Hornbach
Trial Attorney

In a decision dated November 9, 1973, the immigration judge found the respondent deportable as charged and denied his application for voluntary departure. The respondent has appealed from that decision. The appeal will be dismissed.

The respondent was admitted to the United States for permanent residence on September 14, 1971. At that time, he was in possession of a labor certification issued on the basis of an application executed by Harry Ho, who was then the president of San Francisco Chinese Opera Club. This application stated that the respondent would be paid a salary

of $650 per month, and that he would instruct over 40 pupils. The application evidently was submitted by Harry Ho without the knowledge or consent of the other officers of the club (Exh. 5 "C", p. 2).

A Service investigation revealed that the San Francisco Chinese Opera Club did not at any time have the funds required to pay the respondent (and another alien music teacher for whom it also had petitioned) at a rate of $650 per months (Exh. 5). In a sworn statement, Harry Ho admitted that the club never had paid the repondent a salary of $650, nor was the club ever in a financial position to do so. Mr. Ho claimed that he had hoped that in the future the club could afford to pay the respondent such an amount (Exh. 3 "C", pp. 5-7). However, Mr. Ho stated that he did not divulge the true facts surrounding the respondent's employment to the Labor Department because "they wouldn't understand, then they would deny the petition." (Exh. 3 "C", p. 12)

When initially questioned under oath by the Service, on June 12, 1972, the respondent claimed to have had no knowledge that his job offer mentioned a salary of $650 per month until informed of that fact by the Service at the time of the interview (Exh. 3 "A", p. 3). Later the respondent claimed that his employment contract provided for the monthly payment of $650 by the club (Tr. p. 18).

The evidence of record establishes that the respondent was never paid a salary of $650 per month by the San Francisco Chinese Opera Club. Nevertheless, the club's financial records and canceled checks show that the respondent received several monthly checks for $650 from the club (Exhs. 5 "A" & "B"). The current president of the club stated that the respondent and the other alien music teacher gave the club $650 for deposit in each of these months and received in return the club's check for the same amount "just for the record." He indicated that this procedure had been set up when Harry Ho was the president of the club, and that it had been continued for some time thereafter. The arrangement was such that the check for $650 was written only if the respondent and the other instructor turned in that amount of money to the club. If less than $650 were turned in by either of the instructors, the club was in no financial position to reimburse him for the difference between the amount he turned in and $650. The club would issue the check without regard to the source of the funds turned in by the instructors (Exh. 5 "C", p. 4).

The respondent gave conflicting explanations regarding his financial arrangements with the club. At best, however, he only collected an average of $300–$400 per month from his students (tr. p. 24). Since he has been in the United States, the respondent has worked as a janitor in a restaurant and as a busboy in addition to his music teaching. The immigration judge, who had an opportunity to observe the respondent's demeanor, found him not to be a credible witness.

29 CFR 60.5(g) states:

> [Labor] Certifications issued pursuant to this part are invalid if the representations upon which they are based are materially incorrect. Materially incorrect, for the purposes of this paragraph, means that if the correct facts had been known a certification could not have been issued pursuant to the requirements set forth at section 212(a)(14) of the Immigration and Nationality Act.

The respondent's labor certification was issued on the basis of incorrect representations in the application. If the correct facts had been known, no labor certification could have been issued, since it would have been apparent that the San Francisco Chinese Opera Club had no job to offer the respondent. At the most, there was an arrangement by which the respondent could give private music lessons to club members for whatever compensation he might receive. In addition, he might receive some unspecified compensation for helping the club stage its yearly "money-making" production.[1] The respondent's purported "salary" from the club was nothing more than a ruse by which he was allowed to submit $650 of his own money, obtained from any source, and receive a check back from the club "for the record." The respondent's labor certification was issued on the basis of material misrepresentations. His deportability under section 241(a)(1) of the Immigration and Nationality Act by reason of section 212(a)(14) of the Act has been established by clear, convincing, and unequivocal evidence.

The respondent applied for the privilege of voluntary departure. The immigration judge denied such relief in the exercise of his discretion. We find that the respondent was a knowing participant in a scheme to circumvent the labor certification requirements of the Act. In addition, there were several inconsistencies in the statements the respondent made under oath. We agree with the immigration judge that the respondent does not merit a favorable exercise of discretion.

The result reached by the immigration judge was correct. The appeal will be dismissed.

ORDER: The appeal is dismissed.

---

[1] The club apparently puts on one production each year for which admission is charged. Such productions evidently make little, if any, profit for the club (Exh. 5 "C", pp. 5-6).